NOT DESIGNATED FOR PUBLICATION

No. 127,185

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY KENT WIECHMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Submitted without oral argument. Opinion filed July 10, 2026. Affirmed

*Elizabeth Seale Cateforis*, of Paul E. Wilson Project for Innocence and Post-Conviction Remedies, of Lawrence, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON, J., and MICHAEL B. BUSER, retired Court of Appeals Judge, assigned.

MALONE, J.:  Jeffrey Kent Wiechman appeals his conviction following a jury trial of one count of electronic solicitation. Wiechman claims:  (1) The district court violated his right to counsel under the Sixth Amendment to the United States Constitution by accepting his written waiver of counsel without conducting an adequate inquiry and making sufficient findings to establish the waiver was knowing and voluntary; (2) the complaint in his case was defective because it failed to allege any facts that constitute the

1

crime of electronic solicitation, and failed to meet constitutional due process and notice requirements; (3) the district court committed reversible error by admitting into evidence a photograph of the lock screen on his cellphone; and (4) he was denied a fair trial based on cumulative error. After thoroughly reviewing the record and the parties' arguments, we find no reversible error and affirm the district court's judgment.

*Factual and procedural background*

On the evening of January 21, 2022, Wiechman texted his granddaughter, M.H., who was 15 years old at the time. Wiechman was working in Florida and M.H. resided in Sedgwick County, Kansas. The two discussed M.H. joining Wiechman and a woman named Carrie to do hallucinogenic mushrooms. Wiechman turned the conversation toward sex with comments about wanting to get M.H. "some action" and asking if M.H. would "want me watching you and Carrie?" M.H. did not reciprocate and responded she wanted Wiechman present while "tripping . . . but not in a sexual context."

As the conversation continued Wiechman steered the topic back to sex asking things like: "Did you ever try to spy on me at all?!" When M.H. told him no he responded: "I wish I could tell you the same." Eventually Wiechman texted, "I use to sit on the bathroom floor when I was supposed to be in the shower hoping you would see me." When asked what else he did, Wiechman responded that he would "[r]ub myself over my shorts in plain view of your room," and eventually asked, "You don't want to do that with Carrie and I?!" He continued, "Do you think I'm perverted wanting to watch my granddaughter with someone," and "We will all be in the same room!! Oh [Carrie] is into it!!! She likes eating young girls out." Wiechman asked if he could masturbate while "you do that" and said "I have always wanted to watch you do yourself." M.H. declined. Eventually Wiechman told M.H. to erase the conversation.

2

The two texted again on February 4, 2022, and Wiechman informed M.H. that "Carrie might come get you if you still want to hook up with her!!" Most of that conversation involved Wiechman trying to contact Carrie to pick up M.H. from her dad's house so they could smoke marijuana and so M.H. could "'bond' with [Carrie]." Wiechman again admonished M.H. to delete their conversations.

In another text conversation on May 28, 2022, Wiechman sent a long message where he claimed he disapproved of M.H. trying sex or drugs. Wiechman texted that "I was saying those things to scare you into thinking that this is NOT where you want to go." M.H. responded that she did not believe him.

M.H. disclosed the text messages to her mother, which led them to report the text messages to law enforcement. On July 22, 2022, Ashton Gillette, a social worker for the Department of Children and Families, and Natalie Daemen, a detective with the Wichita Police Department, interviewed M.H. at the Child Advocacy Center. M.H. recounted the January 2022 text exchange and how "[Wiechman] turned it completely sexual and . . . basically was trying to set me up with Carrie . . . as a hookup and asked if he could watch and masturbate while it was happening."

Daemen interviewed Wiechman on July 28, 2022. Daemen asked generally about whether Wiechman remembered any conversations with M.H., and Wiechman volunteered that M.H. wanted him to get her hallucinogenic mushrooms and that he tried to scare her by telling her that mushrooms had a "sexual side." Wiechman denied sexual intentions towards M.H. and asserted that the January 2022 conversation was all about scaring her away from drugs. Wiechman also told Daemen about a time he was living with one of his daughters and a different granddaughter walked in on him masturbating and watching pornography and that "she turns it around and made it seem like I asked her to come over and take a look at it." Wiechman confirmed the incident resulted in unspecified criminal charges against him for which he accepted a plea offer.

3

On August 2, 2022, the State charged Wiechman with one count of electronic solicitation of a child. The district court appointed counsel to represent Wiechman at his first appearance based on his financial affidavit. On August 18, 2022, Wiechman filed a handwritten motion asking to represent himself. At a hearing on September 2, 2022, Wiechman appeared with counsel and the district court took up the motion. The district court explained that it had provided Wiechman with a waiver of counsel form before the hearing and Wiechman affirmed that he had read it. The judge explained to Wiechman that as he read the document, "if there is anything that you want me to explain further, if you have any questions about anything that I go over, just stop me. I'll take the time to answer any questions or address any other concerns that you may have. Okay?" Wiechman responded, "Okay." The judge then read the form aloud as follows:

"THE COURT: All right. The document is titled State of Kansas versus Jeffrey Kent Wiechman. It's waiver of counsel. It reads as follows: I, the undersigned, Jeffrey Kent Wiechman hereby acknowledge that I've been informed of the nature of the proceedings before this Court and of my right to be represented by an attorney.

"I also acknowledge that I have been informed of the charges against me listed below and the possible penalties to which I may be subject if convicted on those charges to 22 CR 980. That's my mistake. I overlooked the case number. Actually it is 22 CR 1123. On the printed document it shows 980, but it's 22 CR 1123.

"It then reads, Count 1, electronic solicitation in parentheses, Severity Level 3 person felony. The next paragraph reads, I know that if I'm convicted on this charge, the Kansas sentencing guidelines grid provides for a sentence of 55 months to 247 months depending on my criminal history, and I know that regardless of my criminal history this is a presumptive prison case.

"I know and understand that I have the right to have counsel appointed to represent me and in this case Mr. Kepfield has been appointed for that purpose, and it further reads, I have the right to have counsel appointed to represent me if I am financially unable to obtain counsel.

"On the second page it reads as follows: I also acknowledge that the Court has informed me of the following: One, that at any time I am permitted to change my mind

and either retain counsel or petition the Court for appointment of counsel to represent me and to assist with my defense of this action.

"Two, that no postponement will be permitted at any time after the proceeding has begun for the reason that counsel was newly brought into the case. Three, that the Court may and will terminate self-representation and declare a mistrial if I deliberately engage in obstructionist misconduct before the Court or jury in this proceeding.

"Four, that the Court has informed me it is detrimental to my case to not accept appointed counsel or employ counsel to represent me in this matter. Five, that if I proceed without counsel I must follow all legal rules applicable to the criminal action.

"Sixth, there are numerous disadvantages to self-representation including the following: A, that the law provides pretrial motions provided to the defendant that are of a technical nature which I may lose if I'm representing myself. B, my lack of legal terms and jargon may impede clear communication with the Court and opposing counsel.

"C, the Judge will not act on your behalf on asserting objections or making appropriate motions where ordinarily it is the duty of counsel to call such matters to the Court's attention. D, the District Attorney will not assist in the defense of the case. E, the rules of law are highly technical and will not be set aside regardless of whether I proceed with counsel or persist in my intention to proceed without counsel.

"F, because I lack legal knowledge or training, I may waive constitutional, statutory and common law rights unknowingly, and G, I know that it is difficult to locate witnesses, interview them, prepare subpoenas and have them served and for an in custody defendant this is an even greater challenge.

"The concluding paragraph then reads even though all the dangers and disadvantages of self-representation have been explained to me by the Court, I hereby acknowledge my understanding that in executing this document I represent that I do not desire to have counsel represent me in this case, either retained or appointed and that I wish to proceed without counsel."

The district court ended its recitation with the adage that an attorney who represents themself has a fool for a client and asked Wiechman, "Does that make any sense to you?" Wiechman responded that it did, and the district court asked, "Do you understand why that would be the case?" Wiechman responded, "Yes, I do." The district court asked if Wiechman still intended to proceed pro se and Wiechman affirmed, though

he asked a question about how a lack of legal knowledge might result in the unintentional waiver of some right, which the district court answered. When asked if the answer made sense, Wiechman responded, "Yes, sir." Wiechman signed the waiver form in the courtroom on the record and the district court accepted his waiver of the right to counsel.

Not many things happened in the case during the brief time Wiechman acted pro se. The district court held a bond reduction hearing on September 16, 2022, where the district court denied Wiechman's motion for a reduction of bond based on his criminal history of a sex offense with another granddaughter and the severity of the allegations in this case. The district court intended to hold a preliminary hearing on October 6, 2022, but granted a continuance because Wiechman was not ready to proceed. The court held another hearing on November 10, 2022, where Wiechman acknowledged the district court had explained to him his right to counsel. Wiechman announced he had changed his mind and requested appointed counsel. The district court appointed new counsel who represented Wiechman through the remainder of the proceedings in district court.

The district court held a jury trial on July 18 and 19, 2023. M.H. testified for the State and largely mirrored her forensic interview and recounted the text messages Wiechman sent in January 2022. Gillett provided foundation for a recording of the forensic interview with M.H. Christopher Carlton, a corporal with the Sedgwick County Sheriff's Department, provided foundation for two snippets of telephone calls that Wiechman made from jail. Dan Ribble, a detective with the Sedgwick County Sheriff's Department, provided foundation for copies of the text messages between Wiechman and M.H. that Ribble extracted from M.H.'s cellphone. Daemen testified about the text messages, about her part in the forensic interview with M.H., and about her interview with Wiechman, and to provide foundation for a recording of that interview.

The district court also admitted into evidence copies of the text messages, the recording of M.H.'s forensic interview, the recording of Wiechman's interview with

Daemen, and two snippets of jailhouse telephone calls where Wiechman asked to have his cellphone wiped and where he admitted to believing M.H. was 14 or 15 years old when he texted her. Over Wiechman's objection on foundation and relevancy grounds, the district court also admitted into evidence a picture of the lock screen on Wiechman's cellphone depicting part of a woman's torso and legs as she wore a bikini.

Wiechman testified in his own defense. Wiechman denied all wrongdoing and testified consistent with his interview with Daemen that he sent the sexually charged text messages to scare M.H. away from drugs. On cross-examination Wiechman claimed to have called his boss from jail asking him to remotely wipe his cellphone because Wiechman had videos of himself masturbating that he did not want others to see. The prosecution impeached Wiechman with two prior criminal cases—one where he asked a girl living with one of Wiechman's daughters for photos of herself that he claimed was misconstrued to be sexual, and the incident he told Daemen about where a different 15-year-old granddaughter walked in on him masturbating and watching pornography. After hearing the evidence, the jury found Wiechman guilty as charged.

Wiechman filed posttrial motions including a motion for new trial, a motion for judgment of acquittal, and a motion for arrest of judgment which challenged the sufficiency of the complaint. The district court denied these motions. On November 17, 2023, the district court sentenced Wiechman to 89 months' imprisonment with 36 months' postrelease supervision. Wiechman timely appealed the district court's judgment.

*Did the district court violate Wiechman's Sixth Amendment right to counsel?*

Wiechman first claims the district court violated his Sixth Amendment right to counsel by accepting his written waiver of counsel at the hearing on September 2, 2022. Wiechman argues the district court failed to conduct an adequate inquiry and make sufficient findings to establish the waiver was knowing and voluntary. He then argues the

7

invalid waiver of counsel amounted to structural error and deprived him of his right to counsel during critical stages of the proceedings including a bond reduction hearing. The State contends that Wiechman knowingly and voluntarily waived his right to counsel. Alternatively, the State argues that Wiechman is not entitled to relief because he was not denied his right to counsel at any critical stage of the proceedings.

Wiechman acknowledges he is raising this issue for the first time on appeal. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the court for appellate review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Wiechman asserts we should address the issue because it is necessary to protect his fundamental rights. The State does not address preservation. Wiechman is correct that an appellate court may address a constitutional issue for the first time on appeal if consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *Holley*, 315 Kan. at 524. And the right to counsel is a fundamental right. *State v. Kemmerly*, 319 Kan. 91, 96, 552 P.3d 1244 (2024). Thus, we will address Wiechman's arguments for the first time on appeal.

"The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to assistance of legal counsel during all critical stages of a criminal proceeding." *State v. Trass*, 319 Kan. 525, 536, 556 P.3d 476 (2024). "The Sixth Amendment right to counsel applies 'only to the "critical stages" of the proceedings against the defendant.'" *State v. Mattox*, 305 Kan. 1015, 1053, 390 P.3d 514 (2017). This court has unlimited review over questions related to the right to counsel. *Trass*, 319 Kan. at 529.

"'Waiver of the right to counsel must be knowingly and intelligently made and the determination of such a waiver depends on the particular facts and circumstances of each case.'" *Kemmerly*, 319 Kan. at 93 (quoting *State v. Buckland*, 245 Kan. 132, 137, 777

P.2d 745 [1989]). Courts need not follow a checklist while assessing and accepting waivers, and instead the Kansas Supreme Court has suggested a three-step framework:

> "'First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case.'" *Kemmerly*, 319 Kan. at 97 (quoting *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 [2020]).

This court conducts a bifurcated review of the district court's findings in accepting a waiver of the right to counsel. *Kemmerly*, 319 Kan. at 93. This court reviews the district court's factual findings for substantial competent evidence and its legal conclusions from that evidence de novo. 319 Kan. at 93. "Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). This court's review of the sufficiency of the waiver of the right to counsel extends to the entire record. *Kemmerly*, 319 Kan. at 98.

Wiechman claims the district court "failed to adequately ensure that Mr. Wiechman understood the court's disclosures," and that the entire record "offers no evidence" that Wiechman understood the rights he was waiving and the consequences of waiver. Walking through the three-step framework, Wiechman does not claim on appeal that the district court failed to advise him of the right to counsel and to appoint counsel if indigent, nor does he claim that he did not possess the intelligence or capacity to appreciate the consequences of his waiver of the right to counsel. He instead focuses on the third step: whether he understood the charges, punishments facts, and proceedings.

The district court's waiver colloquy was straightforward. The district court provided a waiver form with many of the waiver factors that this court provided in *State*

*v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 (1993), and the court confirmed that Wiechman read the form. The district court informed Wiechman that it would read the form to him on the record and that Wiechman could stop the district court at any time if he had questions or wanted more explanation, and the district court would take time to answer questions and address concerns. After reading the form aloud the district court recited the adage that an attorney who represents themself has a fool for a client. The district court asked, "Does that make any sense to you?" Wiechman responded, "Yes." The district court then asked, "Do you understand why that would be the case?" Wiechman responded, "Yes, I do." When instructed to sign the waiver form after affirming he wanted to continue pro se, Wiechman stopped to ask a question, which the district court answered and Wiechman affirmed he understood the answer. Wiechman signed the waiver form in the courtroom on the record, and the district court accepted the waiver.

Wiechman's first argument boils down to a claim that the district court asked too few questions during the waiver colloquy and therefore did not inquire enough about Wiechman's understanding. Wiechman points to the district court's question of "Does that make any sense to you?" and interprets it to mean the district court asked only if its adage that an attorney who represents themself has a fool for a client makes sense. But a more comprehensive reading of the colloquy reflects that the district court's question referred to the entire recitation of the rights in the waiver form. The same is true of the follow up question of whether Wiechman could see why "that" was the case. Perhaps the district court could have asked Wiechman additional questions about his background and education to establish that he was up to the task of handling his case without the assistance of legal counsel. But we find there is substantial competent evidence in the record to establish that Wiechman's waiver of counsel was knowing and voluntary.

Wiechman signed his waiver form in the courtroom on the record after the district court's oral advisements from the bench and before the district court accepted the waiver.

10

That form stated, among other things, that Wiechman knew the charge, the possible sentences, that this was a presumptive prison case, and that he had the right to counsel and appointment of counsel. The form also advised Wiechman that he must follow all legal rules applicable to the trial of a criminal action and of the dangers and disadvantages of self-representation. Finally, the form advised Wiechman that he would be permitted to change his mind and ask for reappointment of counsel.

Wiechman also claims his question to the district court about unintentionally waiving a right shows he lacked a general understanding of his rights and the consequences of waiver. But a more logical interpretation of the exchange is that Wiechman asking for clarification showed that he understood the district court's instructions to ask for additional explanation if he had questions or concerns. The district court made it clear to Wiechman that he could interrupt the proceedings at any time to ask questions and the court would take the time to address any concerns that Wiechman expressed. Wiechman responded that he understood.

Finally, the fact that Wiechman remained self-represented for only a brief period of time during the proceedings in district court provides evidence that he fully understood his right to counsel. The district court had instructed Wiechman that he would be permitted to change his mind at any time and request reappointment of counsel. At a hearing on November 10, 2022, Wiechman took the district court up on that offer and received new appointed counsel for the remainder of the proceedings in district court.

Based on the record for our review, we find the district court conducted an adequate inquiry and made sufficient findings to establish that Wiechman's waiver of counsel was knowing and voluntary. As a result, we need not address Wiechman's assertion that his bond reduction hearing conducted without counsel was a critical stage of the proceedings. We conclude the district court did not violate Wiechman's Sixth Amendment right to counsel at any stage of the proceedings in district court.

11

*Was the complaint charging Wiechman with electronic solicitation defective?*

Next, Wiechman claims the complaint in his case was defective because it failed to allege any facts that constitute the crime of electronic solicitation and failed to meet constitutional due process and notice requirements. More specifically, he asserts the complaint did not allege the mens rea necessary to commit the crime and failed to specify the "unlawful sex act" he allegedly solicited M.H. to commit. Wiechman contends the defective complaint entitles him to receive a new trial. The State asserts the charging document was not defective, as it used the appropriate statutory language and alleged facts that would establish the commission of electronic solicitation. The State also contends that even if the complaint was somehow defective, Wiechman is not entitled to relief because the error did not affect his substantial rights.

The parties agree that Wiechman has preserved this issue for appellate review because he challenged the sufficiency of the complaint in district court, specifically in his timely motion for arrest of judgment which the district court denied. The parties also agree that because this issue requires both statutory and constitutional interpretation, the standard of review for a challenge to the sufficiency of the charging document is de novo. *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016).

*Dunn* is the seminal Kansas case addressing charging documents and reworked the framework for challenging criminal complaints. In *Dunn*, our Supreme Court held that the Kansas Constitution, not charging documents, confers subject matter jurisdiction on state courts to adjudicate criminal cases. 304 Kan. at 811. The court also held that Kansas charging documents need only show that a case has been filed in the correct court, e.g., the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant. 304 Kan. at 811.

12

Under the analysis in *Dunn*, there are three possible types of charging document insufficiency a criminal defendant may challenge:

"First, either a district or appellate court may be asked to decide whether the document shows that the Kansas constitutional minimums of correct court and correct territory are met. Second, a court may be asked to evaluate whether the document alleges facts about the intent and action on the part of the defendant that, if proved beyond a reasonable doubt, would constitute violation of a Kansas criminal statute. And, third, a court may be asked to determine whether the charging document meets federal and state constitutional standards for due process and notice, such that the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy." 304 Kan. at 815.

Wiechman focuses on the second and third types of insufficiencies. He argues the complaint did not allege sufficient facts to constitute a crime because it did not allege a mens rea. He also argues the complaint did not provide notice because it failed to specify the "unlawful sex act" he solicited M.H. to commit. The original complaint alleged:

"that in the County of Sedgwick, and State of Kansas, and on or about the 22nd day of January, 2022 A.D., one JEFFERY KENT WIECHMAN did then and there unlawfully entice or solicit by means of communication conducted through the telephone, internet, e-mail, chat rooms, text messaging or other electronic means, to wit: MEH, a person whom JEFFREY KENT WIECHMAN believes to be a child 14 or more years of age but less than 16 years of age, to commit or submit to an unlawful sex act."

Under K.S.A. 21-5509(a), "Electronic solicitation is, by means of communication conducted through the telephone, internet or by other electronic means, enticing or soliciting a person, whom the offender believes to be a child, to commit or submit to an unlawful sexual act." As used in the statute, "'communication conducted through the internet or by other electronic means' includes, but is not limited to, email, chatroom chats and text messaging." K.S.A. 21-5509(c). "'Solicit' or 'solicitation' means to

13

command, authorize, urge, incite, request or advise another to commit a crime." K.S.A. 21-5111(cc).

Starting with mens rea, Wiechman contends the complaint did not allege sufficient facts to constitute a crime because it omitted the culpable mental state required to commit the crime. But as we have just pointed out, "solicit" and "solicitation" as used in K.S.A. 21-5509(a) are defined terms and mean "to command, authorize, urge, incite, request or advise another to commit a crime." See K.S.A. 21-5111(cc). To command, authorize, urge, incite, request or advise another person to commit a crime is consistent with the statutory definition of intentional conduct. See K.S.A. 21-5202(h) ("A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result."). In other words, the statutory definition of solicit and solicitation incorporates a statutory culpable mental state. Thus, Wiechman should not have been confused or mislead by the language of the complaint.

But more importantly, as the State contends, the complaint charging Wiechman with electronic solicitation was drawn in the language of the statute, which is deemed sufficient under the law. See K.S.A. 22-3201(b). The fact that the complaint charging Wiechman with electronic solicitation did not allege a mens rea does not make it defective. See *Dunn*, 304 Kan. at 811 (setting forth requirements of a sufficient charging document). Wiechman's argument that the complaint did not allege sufficient facts to constitute a crime because it did not allege a mens rea fails.

Wiechman also argues that the complaint did not provide adequate notice because it failed to specify the "unlawful sexual act" he allegedly solicited M.H. to commit. As Wiechman argues, an "unlawful sexual act" is a legal term defined in K.S.A. 21-5501(d), which sets out eight sex crimes, each of which can be committed in multiple ways. Thus, Wiechman asserts the complaint failed to specify the particulars of the crime he was

14

charged with committing sufficiently to allow him to prepare a defense. But as the State points out, a defendant should address such a problem by requesting the State to furnish a bill of particulars. See K.S.A. 22-3201(f); *State v. Sayler*, 306 Kan. 1279, 1284, 404 P.3d 333 (2017). Wiechman did not request the State to furnish a bill of particulars before trial. In fact, Wiechman waived a preliminary hearing which would have allowed him to question the complaining witness about the specifics of the crime. At trial, the district court instructed the jury that to establish the charge of electronic solicitation, the State needed to prove that Wiechman used electronic means to solicit M.H. to commit criminal sodomy, based on the evidence the State presented at the trial.

As stated before, the complaint against Wiechman was drawn in the language of the statute under which he was charged, which is deemed sufficient under the law. See K.S.A. 22-3201(b). It alleged facts that, if proved beyond a reasonable doubt, would constitute the crime of electronic solicitation. See *Dunn*, 304 Kan. at 811. The complaint did not need to specify which "unlawful sexual act" Wiechman allegedly solicited M.H. to commit. Wiechman had the means to learn the particulars of the crime he was charged with committing sufficient to allow him to prepare a defense. Wiechman's argument that the complaint did not provide adequate notice because it failed to specify the "unlawful sexual act" he allegedly solicited M.H. to commit fails.

Finally, even if the complaint charging Wiechman with electronic solicitation was somehow defective, Wiechman is not entitled to relief because the error did not affect his substantial rights. *Dunn*, 304 Kan. at 821. Because the district court's subject matter jurisdiction is not conferred by the charging document, a defendant's challenge to the charging document is to be treated no differently than any other claim of trial error, meaning it is subject to harmless error analysis under K.S.A. 60-261 and K.S.A. 60-2105. *Dunn*, 304 Kan. at 821. As in *Dunn*, the record here reflects that Wiechman "clearly understood exactly what the State sought to prove." 304 Kan. at 821. Beginning with Wiechman's custodial interview with Daemen and extending all the way through trial,

15

Wiechman never denied sending the text messages to M.H. Rather, Wiechman claimed that he had no sexual intent in sending the messages; he was simply trying to scare M.H. away from drugs. Considering Wiechman's defense, it did not matter whether the complaint specified which "unlawful sexual act" he allegedly solicited M.H. to commit.

Nothing in the language of the complaint denied Wiechman a fair trial or prevented the jury from deciding the narrow issue contested by the parties. Even if the complaint charging Wiechman with electronic solicitation was somehow defective, the error did not affect Wiechman's substantial rights and was therefore harmless. See K.S.A. 60-261 and K.S.A. 60-2105. We conclude Wiechman is not entitled to receive a new trial based on any alleged error or insufficiency with the charging document.

*Was the admission of Wiechman's cellphone lock screen into evidence reversible error?*

Next, Wiechman claims the district court committed reversible error by admitting into evidence a photograph of the lock screen on his cellphone. The photograph depicted part of a woman's torso and legs as she wore a bikini. Wiechman asserts the photograph was not material and highly prejudicial. The State argues the photograph of the lock screen was relevant and properly admitted into evidence. Alternatively, the State argues that any error in admitting the evidence was harmless.

This issue is preserved because Wiechman lodged a timely objection to the evidence at trial on foundation and relevancy grounds. "The admission of evidence involves several legal considerations:  determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 60-261. *State v. Shields*, 315 Kan. 814, 832, 511 P.3d 931 (2022).

16

Wiechman claims the district court erred in admitting the lock screen photograph because it was not material. All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision. *Levy*, 313 Kan. at 237. "'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The State claims the evidence is relevant in that it supports the fact that Wiechman was a sexually motivated person and therefore makes it more likely that his text messages to M.H. were sexually motivated. Wiechman disagrees and cites several cases where, for example, evidence of pornography was found immaterial for various purposes.

Assuming without deciding that the district court should have excluded the evidence, the admission of the lock screen photograph was harmless error. An error in the admission of evidence is harmless when there is no reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Gaona*, 293 Kan. 930, 940, 270 P.3d 1165 (2012); see also K.S.A. 60-261 (erroneous admission of evidence is harmless unless it affects the defendant's substantial rights). The party benefitting from the error bears the burden of proving harmlessness. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

As the State points out, the evidence here included the highly incriminating text messages rife with sexually charged statements from Wiechman allowing the jury to reasonably infer that they were sexually motivated. Indeed, it is difficult to draw any other conclusion from those messages. The impeachment evidence from Wiechman's cross-examination was also highly material and incriminating on this issue in that he had been in trouble before for sexual conduct with two other children, one of which was a different granddaughter. A swimsuit photo on Wiechman's lock screen would add little to convince the jury of Wiechman's guilt or motivations.

17

Nor did the cellphone evidence prejudice Wiechman considering the other evidence. In a jailhouse telephone call Wiechman asked his boss to wipe his cellphone, which he explained in testimony occurred because he had videos on his cellphone of him masturbating. Wiechman also admitted to watching pornography. Evidence like that, combined with the highly incriminating text messages and evidence of prior misconduct with a grandchild, so overshadowed the lock screen photo to where it would have done little to taint the jury's opinion of Wiechman in comparison to the large amount of other, much more prejudicial evidence of Wiechman's proclivities. Any error in the admission of the photograph did not affect Wiechman's substantial rights and there is no reasonable probability that any error affected the outcome of the trial in light of the entire record.

*Was Wiechman denied a fair trial based on cumulative error?*

Wiechman claims that cumulative error warrants reversal of his conviction. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in context and consider how the trial judge dealt with the errors as they arose; the nature and number of errors and whether they are interrelated; and the overall strength of the evidence. If any of the errors being aggregated are constitutional in nature, the cumulative effect must be harmless beyond a reasonable doubt. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024). "The cumulative error rule does not apply if there are no errors or only a single error." *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

We found that, assuming the district court should have excluded the photograph of the cellphone lock screen, any error was harmless. We found no error in the sufficiency of the complaint but also added that any error would have been harmless. Even if we

18

consider these two potential errors collectively, we conclude they did not substantially prejudice Wiechman and deny him a fair trial. Wiechman's cumulative error claim fails.

Affirmed.